Karl L. Smith and Louise C. Smith, husband and wife v. Commissioner. Frank E. Smith and Katie E. Smith, husband and wife v. Commissioner.
Smith v. Commissioner
Docket Nos. 32370, 32371.
United States Tax Court
T.C. Memo 1957-43; 1957 Tax Ct. Memo LEXIS 208; 16 T.C.M. (CCH) 185; T.C.M. (RIA) 57043; March 15, 1957
Karl L. Smith, R.F.D. No. 1, Bradenton, Fla., for the petitioners. J. Elton Mitchiner, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in income tax and additions to tax under sections 293(b) and 291(a) of the Internal Revenue Code of 1939 against the petitioners, as follows: Additions to Tax under
Docket No.
Petitioner
Year
Deficiency
Sec. 293(b)
Sec. 291(a)
32370
Karl L. Smith and Louise C. Smith
1938
$ 600.84
$ 300.42
1939
763.29
381.65
1940
886.22
443.11
1941
2,339.45
1,169.72
1942
7,946.69
3,973.35
1943
22,627.55
11,057.36
1944
17,077.28
8,538.64
1945
15,385.01
7,692.51
1946
19,165.88
9,582.94
32371
Frank E. Smith and Katie E. Smith
1938
580.99
290.50
1939
797.46
398.73
1940
975.93
487.97
1941
2,457.38
1,228.69
1942
9,132.33
4,566.16
1945
321.00
160.50
$80.25
*209 The issues to be decided are the correctness of the respondent's action (1) in determining the amounts of Karl L. Smith's taxable income for the years 1938 through 1946 from a business conducted under the name of Lone Palm Preserving Company, and of his and Louise C. Smith's total taxable income for those years; (2) in determining the amounts of Frank E. Smith's taxable income for the years 1938 through 1942 from the business conducted under the name of Lone Palm Preserving Company, and of his and Katie E. Smith's total taxable income for those years and for the year 1945; (3) in determining that for the years 1938 through 1946 Karl Smith and Louise C. Smith were liable for additions to tax for fraud under section 293(b) of the Internal Revenue Code of 1939; (4) in determining that for the years 1938 through 1942, and for 1945, Frank E. Smith and Katie E. Smith were liable for additions to tax for fraud under section 293(b) of the Code; (5) in determining that for 1945 Frank E. Smith and Katie E. Smith were liable for an addition to tax under section 291(a) of the Code for failure to file an income tax return for that year; (6) in determining that the period of limitations for assessment *210 of tax against Karl L. Smith and Louise C. Smith for 1938 through 1946 has not expired; and (7) in determining that the period of limitations for assessment of tax against Frank E. Smith and Katie E. Smith for 1938 through 1942, and for 1945, has not expired. Findings of Fact Some of the facts have been stipulated and are found as stipulated. Petitioners Karl L. Smith and Louise C. Smith are husband and wife and reside at Palma Sola, Florida. Their post office address in R.F.D. 1, Bradenton, Florida. They timely filed joint individual income tax returns for 1938 through 1946 with the collector of internal revenue for Florida. Petitioners Frank E. Smith and Katie E. Smith are husband and wife and reside at Palma Sola, Florida. Their post office address is R.F.D. 1, Bradenton, Florida. They timely filed joint individual income tax returns for 1938 through 1942 with the collector of internal revenue for Florida. They did not file any income tax return for 1945. Frank E. Smith and Katie E. Smith are the father and mother of Karl L. Smith and Furman R. Smith. About 1912, Frank E. Smith and Katie E. Smith moved to Palma Sola, which is located about five miles west of Bradenton. *211 At that time Frank E. Smith began to raise guava fruits. He also began to manufacture and sell fruit marmalades and jellies, conducting operations under the name of Lone Palm Preserving Company, sometimes hereinafter referred to as Lone Palm. Karl L. Smith completed his education at the University of Florida in 1928, and immediately thereafter became associated with his father, Frank E. Smith, in the business conducted under the name of Lone Palm. At the time he became so associated with his father there was a verbal understanding between them that Karl was to participate as a partner in the profits from the operation of the business to the extent of 25 per cent. About 1930, Furman R. Smith began working in the business under a similar verbal understanding, that he too was to participate as a partner in the operating profits of the business to the extent of 25 per cent. The business continued to be conducted under the name of Lone Palm Preserving Company. Beginning prior to 1938 and continuing through 1941, the interests of the partners in the operating profits of the business were one-third each. At the time they became associated in the partnership business, neither Karl nor *212 Furman invested any capital in the business or purchased any interest in the assets used therein. Frank E. Smith and Katie E. Smith owned and continued to own approximately 38 acres of guava groves. They also owned the building and equipment used in the conduct of the partnership business. From January 1, 1938, through December 31, 1942, Karl owned approximately 20 acres of guava groves. During the years 1938 through 1946 these groves and those owned by Frank E. Smith and Katie E. Smith provided approximately one-half of the fruit used in the Lone Palm business. Furman R. Smith entered the United States Marine Corps in April 1942, at which time he withdrew from the partnership. He did not, upon such withdrawal, receive any payments or distributions in respect of his share or interest in the partnership. After Furman's withdrawal as a member of the partnership, Karl and his father, Frank E. Smith, conducted the business as equal partners, until Frank withdrew from the partnership as of April 1943. At or about the time of his withdrawal, Frank received as payment in full for his interest in the partnership certain United States Government bonds, in the purchase of which the partnership *213 had paid $14,800 in February 1943. With his wife, Katie E. Smith, he continued to hold and own the 38 acres of guava groves and the above real estate occupied and used by the business. During the period Furman was connected with the business, he was responsible for the maintenance of the machinery in use and in addition performed other important services. Frank and Karl did buying, selling and general managing. Following Frank's withdrawal from the business in 1943, and up through 1946, Karl continued the operation of the business as a sole proprietorship. Karl was on active duty with the Civil Air Patrol from July 28, 1942, to the latter part of 1943, and from January 1, 1944, until he was discharged on September 25, 1945, he was assigned to the Air-Sea Rescue Squadron. During such duty and assignment he operated the above business through a manager. He was stationed at Tampa, about fifty miles from Palma Sola, and except for about nine months, during which he was assigned to duty out of the state, he was able to devote an average of one day a week to the business. For the years 1938 through 1942, partnership returns of income, Form 1065, were timely filed under the name of *214 Lone Palm Preserving Company, R.F.D. 1, Bradenton, Florida. Although conducting the business as a sole proprietorship during 1943 through 1946, Karl continued to file partnership returns of income, Form 1065, for the business under the name and address as for the years 1938 through 1942. In the return for 1943, he stated that he was the only operator of the business and reported himself as the only person entitled to the net income shown on the return. Losses were reported on each of the returns for 1944, 1945 and 1946, and in each instance the full amount of the loss was shown as being that of K. L. Smith, although the names of F. E. Smith and F. R. Smith were also shown in the space provided for listing the names of the partners. No books or records were maintained which adequately and correctly reflected the income of the partnership, or of the subsequent sole proprietorship. No book or record was maintained for any year which purported to reflect all of the sales of the business. For the years 1942 through 1946 duplicate copies of sales invoices and an accounts receivable ledger were maintained with respect to credit sales. No record was maintained for any of the years with respect *215 to cash or retail sales. A fairly substantial portion of the sales of the business were retail sales made to tourists and others who came to the plant. The major portion of such sales were made during the months of December, January, February and March. The tourist trade would begin about Thanksgiving and continue through March. December and March were the best months for such sales. Payments were made by these customers in cash and in the form of travelers cheques and some personal checks. Many of the travelers cheques were in amounts in excess of the amounts of the sales, and required the return to the purchasers in cash of such excess amounts, making it necessary in some instances to cash checks so received in order to maintain the amount of cash currently in the cash box at a satisfactory operating level. On the other hand, when the amount of cash from such sales would accumulate above that level, the excess would be removed from the cash box. During the years 1942 through 1946 little, if any, cash was deposited in the bank account maintained for the business and not all checks were deposited. In addition to the checks received on sales at the plant, as above indicated and *216 which were cashed, the business during the years 1942 through 1946 received checks in payment of goods shipped to customers, wholesalers and others, in various parts of the country, which checks were not deposited in the bank account, but were cashed by the owners or employees of Lone Palm. Some of the payments so received were entered to the credit of the said customers in the accounts receivable ledger, and some were not. For the years 1938 through 1946, some of the expenses of the business were paid in cash, for which no records were maintained. Some sellers of fruit purchased by the business required that they be paid in cash. The heaviest purchases of fruit were in July, August and September, and on into October, that being the guava season. Some of the cash paid out in the operation of the business and in the purchase of fruit was obtained from cashing checks drawn on the bank account maintained for the business, the payee of such checks being designated "Cash," but such checks constituted only a portion of the checks drawn on the bank account payable to "Cash." Both Karl and Frank drew checks for personal purposes on the bank account. They "had a lot of personal checks scattered *217 all the time." Frank kept no record of his withdrawals from the business, but as between him and Karl, Karl kept a record. In making the partnership returns of income for all of the years herein, the amount reported as sales was, with comparatively minor differences, the amount of the total deposits in the Lone Palm bank account for each of the years. [1] The amount of sales reported for each such year was not determined by reference to the accounts receivable ledger. The expenses deducted on the returns were determined in part by reference to canceled checks. *218 Total deposits in the Lone Palm bank account as disclosed by the records of the bank, for the years 1938 through 1946, were as follows: Year
Total
1938
$58,913.96
1939
56,692.01
1940
52,751.17
1941
57,326.93
1942
76,893.35
1943
52,662.07
1944
$72,728.18
1945
48,045.22
1946
56,974.88
The sales, cost of goods sold, deductions, and the net income or loss reported on the Lone Palm returns of income filed for the years 1939 through 1946, the respondent's determinations of such items, and the amounts by which, according to the respondent's determinations, such items were understated or overstated on the returns, are as follows: [2]
Amounts determined
by respondent
Reported
Determined
as understated
Year
on return
by respondent
or (overstated)
1939
Gross income
$56,094.52
$ 64,492.01
$ 8,397.49
Deductions
43,326.10
35,636.15
(7,689.95)
Net income
12,768.42
28,855.86
16,087.44
1940
Gross income
52,358.67
64,451.17
12,092.50
Deductions
43,615.34
38,059.26
(5,556.08)
Net income
8,743.33
26,391.91
17,648.58
1941
Gross income
55,190.56
71,463.04
16,272.48
Deductions
47,705.97
42,807.21
(4,898.76)
Net income
7,484.59
28,655.83
21,171.24
1942
Gross income
76,783.22
95,135.68
18,352.46
Deductions
49,014.22
47,442.82
(1,571.40)
Net income
27,769.00
47,692.86
19,923.86
1943
Gross income
52,659.12
83,518.53
30,859.41
Deductions
48,133.40
39,353.88
(8,779.52)
Net income
4,525.72
44,164.65
39,638.93
1944
Gross income
73,487.20
100,090.35
26,603.15
Deductions
74,250.55
64,172.22
(10,078.33)
Net income
(763.35)
35,918.13
36,681.48
1945
Gross income
47,505.92
76,750.73
29,244.81
Deductions
52,472.51
42,907.23
(9,565.28)
Net income
(4,966.59)
33,843.50
38,810.09
1946
Gross income
55,877.59
86,903.87
31,026.28
Deductions
58,615.24
44,383.03
(14,232.21)
Net income
(2,737.65)
42,520.84
45,258.49
*219 In making his determinations for the years 1938 through 1946, the respondent determined that for 78 days in the months of January, February and December of each year the business had cash or retail sales which were unreported on the returns of income, as follows: Total cash
sales deter-
Cash sales
mined by
Year
per day
respondent
1938 $100
$ 7,800
1939
100
7,800
1940
150
11,700
1941 $200
$15,600
1942
200
15,600
1943
200
15,600
1944
200
15,600
1945
200
15,600
1946
200
15,600
In 1942, following the rationing of gasoline, there was a decline in cash sales. The amounts of cash or retail sales made by Lone Palm for the years 1938 through 1946, and the amounts thereof represented by travelers cheques and personal checks deposited in the Lone Palm bank account, were as follows: Amount of
Amount
cash or
of checks
Year
retail sales
deposited
1938
$ 7,800
$ 780
1939
7,800
780
1940
9,700
970
1941
11,700
1,170
1942
10,000
1,000
1943
10,000
1,000
1944
10,000
1,000
1945
10,500
1,050
1946
12,500
1,250
*220 In determining the deficiencies herein, the respondent determined that a substantial portion of the Lone Palm sales for 1942 through 1946, other than the retail sales above, had not been reported. These amounts, according to his determination, were represented by checks received by Lone Palm in payment of goods shipped to customers in various parts of the country, which checks were cashed and never deposited in the Lone Palm bank account. The amounts so added to sales for the said years were as follows: Year
Amount
1942
$ 2,404.63
1943
14,993.27
1944
11,717.57
1945
13,014.71
1946
13,753.86
Of the amounts so added to sales by the respondent, the following amounts represent checks admittedly received by Lone Palm and cashed by the owners or employees of Lone Palm and not deposited in the Lone Palm bank account: Year
Amount [1]
1942
$ 1,698.37
1943
12,292.69
1944
9,949.86
1945
9,231.88
1946
9,675.12
*221 For the years 1938 through 1941 and 1943 though 1946, the respondent disallowed various of the amounts which had been claimed on the Lone Palm returns as the cost of fruit. Most of the amounts disallowed represented the proceeds of checks drawn payable to "Cash" on the Lone Palm bank account in the various years. In a few instances, the checks, the proceeds of which had been claimed as fruit purchases, had been drawn payable to individuals. The amounts so disallowed by the respondent as the cost of fruit purchased during the years indicated were as follows: Year
Amount
1938
$1,229.00
1939
5,092.00
1940
2,065.00
1941
3,053.00
1943
678.00
1944
650.00
1945
2,020.65
1946
4,883.21
Purchases were made by Lone Palm from proceeds of checks made payable to "Cash" during the said years in the following amounts: Year
Amount
1938
$ 600
1939
2,500
1940
1,000
1941
1,500
1943
500
1944
500
1945
1,000
1946
2,400
Respondent, in his determination of deficiencies for 1942, made no disallowance of any part of the amount claimed on the Lone Palm return as the cost of fruit purchased. On the Lone Palm returns of income, some, if not *222 all, of the farm labor expense was included and deducted under Farm expense or Farm Labor and Expense. The respondent disallowed no amounts so claimed which covered the cost of farm labor. For the years 1939 through 1942, no deductions were claimed on the Lone Palm returns as covering plant and office wages, and no amounts were allowed by the respondent therefor in his determination of deficiencies for the said years. For the years 1939 through 1942, Lone Palm paid employees for services rendered in its plant and office as follows: Year
Amount
1939
$1,775
1940
1,700
1941
1,500
1942
1,500
In each of the years 1943 through 1946 the respondent disallowed portions of the deductions claimed for labor or payroll to make the deductions allowed conform to the amounts reported by Lone Palm on its Social Security tax returns as the amounts it had so paid to employees. For the years 1943, 1944 and 1945, the respondent disallowed deductions of $2,255, $3,050 and $1,750, respectively, claimed as manager's salary paid to Charles Scott, Jr. The stated grounds for the disallowance were that Scott was not in Florida until April of 1944, and when he was there, he did not *223 receive any salary from Lone Palm. Scott began working for Lone Palm on February 28, 1944, after which he and his wife worked in the business until May of 1945. For the services rendered by them, they were paid $300 monthly by Lone Palm. These payments were in addition to the payments reported by Lone Palm for Social Security tax purposes. In the Lone Palm returns for the years 1938 through 1941, deductions were taken under the heading Repairs with respect to a boat personally owned by Karl, as follows: Year
Amount
1938
$17.49
1939
17.79
1940
11.62
1941
40.94
For each of the years in question, Karl entertained customers and prospective customers of Lone Palm on fishing parties on his boat. The amounts above claimed were expenditures made in connection with the operation of Lone Palm's business. For 1938, under the heading Labor and Farm expense, and for 1940, under the heading Farm expense, deductions were claimed on the Lone Palm returns of $300 and $1,080, respectively, for expenditures made in behalf of Karl Smith on the motor boat personally owned by him. The $1,080 expended in 1940 was for motors for the boat. The claimed deductions were disallowed *224 by the respondent in his determination of deficiencies for the said years. The amounts in question represented personal expenditures of Karl Smith, and were not expenses of Lone Palm. For each of the years 1938 through 1942, the respondent disallowed numerous other deductions claimed on the Lone Palm returns, for the stated reasons that they represented personal expenditures of various of petitioners Frank E. Smith and Katie E. Smith and Karl L. Smith and Louise C. Smith. For the years 1938 to 1942, inclusive, Frank E. Smith and Karl L. Smith, and for the years 1938 to 1941, inclusive, Furman R. Smith, each reported on his income tax return the amounts shown to have been distributable to him on the Lone Palm partnership return for each year. For 1938 the amount so reported by Frank E. Smith on his return and Karl L. Smith on his return was $4,277.30. [3] The distributive shares as determined by the respondent were $11,925.02 for Karl, $11,925.01 for Frank E., and $4,798.66 for Furman. *225 On the partnership returns for 1939, 1940, 1941 and 1942, the following persons were listed as partners and their respective distributive shares of the partnership net income were shown as follows: 1939
1940
1941
1942
Karl L. Smith
$ 2,553.69
$1,748.67
$1,496.91
$ 5,166.00
Frank E. Smith
2,553.69
1,748.67
1,496.92
5,167.00
Furman R. Smith
2,553.68
1,748.67
1,496.92
5,167.00
George W. Smith
2,553.68
1,748.67
1,496.92
460.00
Edna Grinstead
638.42
582.88
748.46
5,167.00
James G. Jones
582.88
5,167.00
James Felts
638.42
Lois Gilford
638.42
Alma Davis
638.42
582.89
Clarence Carlton
748.46
675.00
Ida Cooper
800.00
Total
$12,768.42
$8,743.33
$7,484.59
$27,769.00
As determined by the respondent, the partners of Lone Palm and their distributive shares of the partnership profits for the years 1939 to 1942, inclusive, were as follows: 1939
1940
1941
1942
Karl L. Smith
$13,151.09
$12,321.62
$13,579.46
$23,846.43
Frank E. Smith
13,151.09
12,321.62
13,579.45
23,846.43
Furman R. Smith
2,553.68
1,748.67
1,496.92
None of the above-named individuals, other than *226 Karl L. Smith, Frank E. Smith and Furman R. Smith, were ever partners in the Lone Palm Preserving Company, and it was never intended that they would be. George W. Smith began working in the Lone Palm business in the early 1930's when he was about seventeen years of age, and continued to work there until May 1942, at which time he accepted other employment. At the time he left Lone Palm, he was receiving $18 a week and his reason for leaving was to accept employment which paid $20 a week. While employed in the Lone Palm business he swept floors, cleaned the place, cooked jelly, and performed other services as directed. Except for one bonus of $25, he never received any bonus or any additional compensation from Lone Palm. He never at any time received any amounts as distributive shares of partnership profits. Edna Grinstead began working in the Lone Palm business about 1938 and continued to work there until February 1943, when she became postmistress of the local post office. When she began working at Lone Palm, she prepared fruit for juicing, and from that her work gradually changed to that of making retail sales and the doing of office work. Her compensation was $12 a week. [4] *227 For some of the years, 1938 through 1942, she received a bonus of $25, and for one year, a bonus of $100. When she left the Lone Palm business in 1943, she did not receive any money or other remuneration for her services for prior years. At no time did she receive any amount as the distributive share of a partner in the Lone Palm business. James G. Jones began working in the Lone Palm business in the late 1920's or early 1930's, and worked at intervals until sometime during 1946. He never worked regularly. When he did work, he cooked jelly and performed other duties in the production end of the business. His wages in 1941 were $20 or $25 a week. He received a small money bonus in December 1942 or December 1944. Never at any time did Jones receive any amount as a distributive share of the profits of the Lone Palm business. Clarence Carlton was employed in the Lone Palm business for about a year, beginning in the latter part of 1941. At first, he drove a tractor but later cooked jelly. When he began working, his wages were $1.50 a day for a six-day week. *228 Before leaving Lone Palm his wages had been increased to $2 a day. At no time did he ever receive any amount as a distributive share of a partner in the Lone Palm business. It was not unusual for Karl L. Smith and Frank E. Smith to issue checks on the partnership bank account payable to George W. Smith, Edna Grinstead and James G. Jones, and request and receive their endorsements thereon. The individuals named never received any of the proceeds of the checks, except an occasional small bonus or their monthly or weekly wages. At the time she left Lone Palm to become Palma Sola postmistress, Edna Grinstead endorsed a check drawn payable to her on the Lone Palm bank account for "around five thousand dollars," but never actually received the check or any part of the proceeds. She was told that the endorsing of the check was to close out or settle up her interest in the business. Karl L. Smith prepared income tax returns for 1942 in the names of the following persons, and personally paid the income tax shown to be due thereon, as follows: Amount
Taxpayer
of tax
Frank E. Smith and Katie E. Smith
$749.64
Furman R. Smith and Beatrice B. Smith
407.44
Edna Grinstead
772.74
James Gilbert Jones
772.74
*229 Jones, at the instigation of Karl Smith, signed a 1942 income tax return form in blank. The return as filed in Jones' name showed his income for the year as $5,167, being the amount appearing as his distributive share of partnership profits on the Lone Palm return. The 1942 return prepared by Karl Smith in the names of Furman R. Smith and Beatrice B. Smith indicated that Furman had received gross income from the Lone Palm partnership of $5,167. It was signed "Furman R. Smith, by K. L. Smith." This return, as was true of theother 1942 returns prepared as shown above by Karl L. Smith, was filed with the collector of internal revenue for Florida. Furman R. Smith and Beatrice B. Smith, on their own account, filed an income tax return for 1942 with the collector of internal revenue for South Carolina, reporting a gross income of $1,150, as compensation received from the United States Marine Corps, and so far as appears, the return filed by Karl with the collector for Florida in the names of Furman R. Smith and Beatrice B. Smith was without their knowledge or authorization. During the years 1939 through 1946 interest was credited to a savings account of Karl L. Smith with the First *230 National Bank of Bradenton, as follows: Year
Amount
1939
$33.33
1940
90.22
1941
76.42
1942
79.37
1943
40.36
1944
56.55
1945
56.51
1946
70.91 No part of any of the interest so credited was reported by Karl in his income tax returns for the said years. On November 20, 1940, Karl L. Smith purchased an airplane for $800, and on January 14, 1943, sold it for $1,000. On June 17, 1943, he purchased a one-half interest in another airplane for $1,250, and on December 23, 1943, sold that interest for $1,750. In his income tax return for 1943 no mention was made of these sales and no income was reported therefrom. The respondent determined that Karl realized long-term capital gain of $350 from the sales. On March 31, 1938, Karl L. Smith and Louise C. Smith acquired approximately six acres of unimproved land located in Manatee County, Florida, at an undisclosed cost, and on July 31, 1944, sold the land for $1,200. In their income tax return for 1944 no mention was made of the sale and no income was reported therefrom. The respondent determined that a long-term capital gain of $569 was realized on the sale. On June 1, 1945, Karl L. Smith purchased a tract *231 of land located in Manatee County, at a cost of $3,500, and on July 6, 1946, sold it for $3,600. In his income tax return for 1946 he reported that the land was acquired in 1942, at a cost of $3,690, and was sold in July 1946 for $3,700, resulting in a gain of $10. Of the latter amount, he included $5 in his return as long-term capital gain. The respondent determined that an additional amount of $45 was includible in income as long-term capital gain realized from the sale of the land. In 1941, 1942 and 1943, Karl L. Smith and Louise C. Smith purchased United States Government bonds of face amounts as follows: Year
Series
Face Amount
1941
D
$ 1,500
1942
E
1,000
1943
E
13,500
G
6,000
Total
$22,000
In joint returns filed by Karl L. Smith and Louise C. Smith for the years 1938 through 1946, they reported taxable net income, or net losses, and paid income tax thereon, as follows: Net Income
Income
Year
or Loss
Tax Paid
Net Income
Income
Year
or Loss
Tax Paid
1938
$4,277.30
$ 8.73
1939
2,553.69
1940
1,748.67
1941
1,496.91
1942
4,713.00
699.86
1943 - Income tax
4,422.86
235.24
Victory tax
4,525.72
1944
( 763.25)
1945
(4,966.59)
1946
(2,732.65)
*232 In determining the deficiencies against petitioners Karl L. Smith and Louise C. Smith for the years herein, the respondent determined that their correct net taxable income for each such year was as follows: Year
Taxable Income
1938
$11,925.02
1939
13,184.42
1940
12,411.84
1941
13,655.88
1942
23,915.80
1943
44,555.01
1944
36,043.68
1945
33,400.01
1946
42,141.75
For the years 1938 through 1942, Karl L. Smith did not keep any books or records with respect to his income from the Lone Palm partnership or from other sources. And for the years 1943 through 1946, he did not keep any books which reflected his income from sources other than the Lone Palm business, and such records as were kept of the Lone Palm business were incomplete and inaccurate, and were not sufficient correctly to reflect his income therefrom. The income tax returns of Karl L. Smith and Louise C. Smith for the years 1938 through 1946 were false and fraudulent and were made with the intent to evade tax. A part of the deficiency for each of those years is due to fraud with intent to evade tax. For the years 1938 through 1942, and for the year 1945, interest was credited to a savings *233 account of Frank E. Smith and Katie E. Smith with the First National Bank of Bradenton, as follows: Year
Amount
1938
$166.03
1939
148.99
1940
177.73
1941
108.82
1942
88.43
1945
58.31 No part of the amounts so credited as interest to the savings account was reported by Frank E. Smith and Katie E. Smith as income for any of the years. About 1936, Frank E. Smith, for an undisclosed amount, purchased a property in Palma Sola, known as the Hull Property. The property consisted of land, with four buildings thereon. One of the buildings was a frame garage; the other buildings, one of which was a store building and two residential buildings, were of concrete block construction. All of the buildings were in run-down condition and unrentable. Shortly after purchasing the property, Frank made some improvements to the buildings, at an undisclosed cost. A new roof was put on each of the buildings, metal roofs being put on the store and residential buildings. An overhaul was made of the woodwork in the store and residential buildings. New window frames were installed and new plumbing and floors were put in. The upstairs part of the store building was remodeled into *234 seven or eight rooms, for living quarters. Floors and other woodwork were painted. After these improvements had been made, some of the buildings were rented. Some remained vacant most of the time. One tenant rented steadily. For an undisclosed period one store room was used for storage purposes by Lone Palm, and during such use an undisclosed amount from the business was used for maintenance of the store building. In his income tax returns for 1938 through 1942, Frank E. Smith did not report any income from rents. The respondent determined that during 1938 through 1942 Frank E. Smith received rental income as follows: Year
Amount
1938
$135.00
1939
135.00
1940
135.00
1941
235.00
1942
278.97
In December 1945, Frank E. Smith sold the Hull property for $7,000, from which he paid a sales commission of $700. The respondent determined that a taxable long-term capital gain of $2,452.50 was realized on the sale of the property. During the years 1938 through 1946 Frank E. Smith and Katie E. Smith purchased United States Government bonds in face amounts as follows: Year
Series
Face Amount
1938
C
$ 4,000
1939
C & D
3,000
1940
D
3,000
1941
D & E
3,000
1942
F
20,000
E
1,000
1943
F
15,000
1944
E
1,000
1945
E
5,000
1946
E
2,000
Total
$57,000
*235 In joint income tax returns filed by Frank E. Smith and Katie E. Smith for the years 1938 through 1942, they reported taxable income, and paid the income tax thereon, as follows: Income
Year
Net Income
Tax Paid
1938
$4,182.85
$ 50.28
1939
2,553.69
1940
1,748.67
1941
1,496.92
1942
4,962.00
749.64
In determining the deficiencies against Frank E. Smith and Katie E. Smith for the years 1938 through 1942 and for 1945, the respondent determined that their correct taxable net income for the said years was as follows: Year
Taxable Income
1938
$12,191.59
1939
13,495.08
1940
12,994.35
1941
14,013.27
1942
26,330.33
1945
2,585.81
The income tax returns of Frank E. Smith and Katie E. Smith for the years 1938 through 1942 were false and fraudulent and were made with the intent to evade tax. A part of the deficiency for each of those years is due to fraud with intent to evade tax. Opinion That the returns of petitioners Karl L. Smith and Louise C. Smith for the years 1938 to 1946, inclusive, were false and fraudulent with intent to evade tax, and that the deficiencies are, in part at least, due to fraud with intent to evade *236 tax, is, in our opinion, clearly and convincingly shown by the evidence of record. And suffice it to say, that for each of the years some of the understatements of income and overstatements of deductions were, as we view the evidence, patently directed to a fraudulent understatement of net taxable income and the income tax thereon. It accordingly follows that the period of limitations prescribed by section 276(a) of the Internal Revenue Code of 1939 has not run against the respondent and that the petitioners are subject to the additions to tax for fraud provided by section 293(b). That is not to say, however, that the understatements of net taxable income and the tax thereon are in all instances the amounts determined by the respondent. First, we are satisfied from the evidence and have concluded and found that Furman R. Smith was a full partner in the Lone Palm business for the years 1938 through 1941, and that the respondent was in error in determining that his interest in the earnings of the business was limited to the amounts reported on the partnership returns and that the remainder was that of Karl and Frank. For the year 1942, Karl and his father, Frank E. Smith, were equal *237 partners and the only partners in the business, and the computations of the distributive shares of income should be made on that basis. The evidence further shows, we think, that the amount determined by the respondent as unreported cash or retail sales was too high. As to the exact amount, the evidence is unsatisfactory and incomplete. We have made our findings as to amounts on the evidence at hand, and to the best of our ability, and effect should be given thereto in recomputing the deficiencies. Cohan v. Commissioner, 39 Fed. (2d) 540. Similarly, the evidence is convincing that Lone Palm did make fruit purchases through the means of checks drawn on the Lone Palm bank account payable to "Cash," and that the respondent erred in not making some allowance therefor. There again, however, the evidence as to amount is not adequate, and we have applied the rule of the Cohan case in making our findings. For the years 1939 through 1942, the petitioners on the Lone Palm returns claimed no deductions, as such, convering compensation paid to plant and office employees, and the respondent, in his determination, made no allowances therefor, it being his conclusion that such *238 compensation as was paid to such employees was covered under the items denominated Farm expense, Farm Labor and Expense, and Miscellaneous. It is the claim of the petitioners that if their contention that such employees were partners and entitled to distributive shares of partnership earnings is rejected, additional payroll or labor deductions should be allowed to cover the amounts actually paid to plant and office employees for the services rendered by them. We are not in doubt, on the evidence, that the employees were never partners in the Lone Palm business and that they were never intended to be, and further, that during such portions of the various years that they did work they received a daily or weekly wage, or that the amounts actually received by them were not in any way geared to the amounts shown on the Lone Palm returns as distributive shares of partnership profits. For each of the years, deductions were claimed on the partnership returns under the category of Farm expense or Farm Labor and Expense, and under the hearing of Miscellaneous. We are not advised by any proof as to the nature and character of the expenditures making up the deduction category listed as Miscellaneous, *239 and we have no way of knowing the extent to which respondent's conclusion is correct that payments for labor were included therein. We are satisfied from the evidence which we do have, however, that to the extent that such wages were included in deductions, under the categories mentioned, the amounts thereof were not sufficient to cover all of the payments so made by Lone Palm in those years. Applying again the rule laid down by Cohan v. Commissioner, supra, we have made a finding of proper amounts to the best of our ability on the evidence at hand. For the years 1943, 1944 and 1945, the respondent disallowed in toto the deductions claimed on the Lone Palm returns as representing manager's salary paid to Charles Scott, Jr. While the record shows that the full amount of the deductions so claimed for 1943 and some part of that claimed for 1945 were pure fabrications, the evidence is clear as to the period during which Scott served Lone Palm as manager and the compensation he received therefor. Effect should be given to our finding in recomputing the deficiencies herein. As to various other items, the evidence has enabled us to make definite findings, and those findings *240 are sufficient for the purposes of the recomputations to be made. In other instances, we have made no findings with respect to items of expense claimed on the Lone Palm returns, but which have been disallowed by the respondent in his determination of deficiencies. In those instances, we have been left without proof, and the respondent's determination must accordingly be sustained, by reason of the failure of the petitioners to bear their burden of proof. With reference to petitioners Frank E. Smith and Katie E. Smith, what has been said above, particularly with respect to the operations of Lone Palm, is equally applicable for the years 1938 through 1942, during which time Frank E. Smith was a partner, and generally, as to items relating to Frank E. Smith individually, what has been said above is also apropos. The evidence, in our opinion, clearly and convincingly shows that the returns of Frank E. Smith and Katie E. Smith for the years 1938 through 1942 were false and fraudulent with intent to evade tax, and that for each of the years the deficiency, in some part, is due to fraud with intent to evade tax. As in the case of Karl L. Smith and Louise C. Smith, we accordingly hold that *241 as to those years the period of limitations has not run against the respondent and that the provisions of section 293(b) with respect to additions to tax for fraud are likewise applicable. For 1945, however, the state of the record calls for a different conclusion. It is true that Frank and Katie did have the burden of showing that the respondent's determination of the deficiency was in error and they have failed to do so. In the main, the deficiency as determined by the respondent is bottomed on his determination of realizations from rent and long-term capital gain from the sale of the Hull Property. We do know that the Hull Property was sold in 1945, but we have no proof that Frank Smith did or did not realize capital gain thereon. As a consequence, we are left only with the respondent's determination that such was the case. Due to the failure of the petitioners to bear their burden of proving that the deficiency as determined was in error, we must, as to the deficiency, hold for the respondent. But, by the same token, the respondent has failed to submit evidence with respect thereto, and there is an absence of proof to show that such gain was actually realized and that the deficiency *242 as determined by him was in any part due to fraud with intent to evade tax. The respondent having failed to carry his burden as to fraud, the decision as to the addition to tax for fraud must be for the petitioners. Inasmuch, however, as Frank and Katie failed to file a return for 1945, the statute of limitations issue must be resolved against them and decided for the respondent. Section 276(a), supra. And further, since they have not shown that their failure to file such a return was due to reasonable cause and not to willful neglect, the addition to tax under section 291(a) of the Code also applies. Decisions will be entered under Rule 50. Footnotes
1. On one occasion during the course of his investigations for the years herein, the special agent for the Internal Revenue Service was told by Karl Smith that the bank deposits represented the gross receipts reported on the returns of income, and among the adjustments made by the revenue agent, and followed by the respondent in his determination of the deficiencies herein, was to first adjust the sales as reported to coincide with the total bank deposits for the years in question. This resulted in comparatively slight increases in sales for all years except 1944. For that year, it resulted in a decrease in sales as reported by $759.02.↩
2. No comparable finding is made for the year 1938, due to the fact that the 1938 return is not in evidence.↩
1. The petitioner, by stipulation with the respondent, has conceded that these amounts did represent checks received from customers in payment for goods and were cashed and never deposited in the Lone Palm bank account. There is no such stipulation as to the remainder of the amounts similarly added to sales by respondent in his determination, but neither is there any proof that the respondent's determination with respect thereto was in error.↩
3. The record does not show the amount reported by Furman on his 1938 return as his distributable share of the Lone Palm profits. Presumably he reported $4,277.30, it being shown that he was an equal partner with Frank and Karl and it being stipulated of record that Frank, Karl and Furman each reported for 1938 the amount shown as his distributive share on the Lone Palm return.↩
4. At the time of leaving Lone Palm to become postmistress at Palma Sola, she may have been receiving $75 to $85 per month.↩